Mr. Neeram, thank you very much, Your Honor. Your Honor, may it please the Court, good morning. As the Court is aware, the issue in this case is whether this insurance policy, in its uninsured motorist coverage, under the facts of this case, provides coverage for a drive-by shooting. The issue is whether such a shooting arose out of the use of an automobile. There are other state Supreme Courts from Hawaii to South Carolina, from Minnesota to Oklahoma, that have found as a matter of law that the drive-by shooting are covered under the uninsured motorist provisions like we have here. Here, however, as the parties agree, we are here to discuss Missouri law and whether under the facts of this case, Missouri law provides for coverage. I'd like to talk about it in the context of the most recent Missouri case that has discussed issues similar to this, and that's the Walden case, the 2014 case out of the Western District Missouri Court of Appeals. In that Walden case, they had a pretty broad survey of what the law in this area in Missouri had been up until 2014, and there have been no cases that either council have discovered that have discussed these issues since then. What it started out with is what it described as the seminal case in this area, and that's Schmidt v. Utilities, and that is the Missouri Supreme Court case from the 40s. In that case, there was a truck that was delivering coal that had put wooden blocks on the sidewalk that somebody tripped over. What the court found importantly is the concept that was reaffirmed by this court as recently as 2003, and that is when we have a rising out of language in an insurance policy, it is interpreted in its broadest possible meaning, and when we say a rising out of, that doesn't require proximate causation. It doesn't require causation. It basically just requires, as other courts have put it, some nexus between the use of the car and whatever happened that caused the injury. This case is really, when push comes to shove, no different than Schmidt v. Utilities. In Schmidt v. Utilities... Well, it requires more than but-for causation. Not in the... The way you're using the word nexus, it sounds like that is something less than but-for causation. Well, there is but-for causation that required to ultimately prove the case in terms of finding coverage, which is the issue we're having here. There has been no requirement that we find a but-for causation. We do have... Well, but in Walden, there clearly was but-for causation, and there wasn't coverage. There was, and what they talked about, and I think we're arguing semantics, Judge, because what they talked about in Schmidt was you can't have an intervening cause, which if you want to label that as but-for causation, then yes, it is. There cannot be an intervening cause. No, but-for causation is if the car hadn't been there with the dog in it, the woman obviously wouldn't have been bitten that way. No, what... Citus would be but-for causation. Citus... Citus is also, quote, nexus, viewed broadly. No, it's a little bit different. It's worse than semantics. You're trying to use semantics to nullify Walden's result. I disagree, Judge, and let's talk about this case in the context of Walden. What the only facts that the court was presented in Walden were is we have a car, there was a dog in it, somebody got bitten. And the owner was in the car. And the owner was in the car. Okay, well, that's not insignificant. And what the court found was that if we're going to go solely on those facts, and we have no other facts developed, and if you read the Walden opinion, that was the real criticism of what the plaintiffs had done in that case is, is that they had basically agreed with the same facts as the insurance company had advanced. And what they said in that case was, look, what the plaintiff is trying to do here is he's trying to change the law. I'm not trying to change the law. Because what I did, as opposed to what the plaintiff did in Walden was, in our case we have developed facts that show that the mere citus... Sweeney. I'm sorry?  Sweeney. Detective Sweeney. That's all you've got that's different. And that's not insignificant, Judge. And that's all I have, but it's significant. Well, but this leads me to what I want to talk to you about, what's an issue of fact and what's an issue of law. You want us in your briefs to assume that this is a fact-intensive issue, and therefore summary judgment was wrong. Correct. Whereas Walden clearly says it's an issue of law. No, Judge. I disagree with that. It says on the uncontroverted facts in Walden it was an issue of law. Yes. What controverted facts do we have that makes it something different here? Whether the car in a drive-by shooting is the instrumentality that is used in the drive-by shooting that caused the injury. That's the issue of law that was identified in Walden. And that's the interesting question. If there's disputed facts, then we have to have an evidentiary hearing. Right. Correct. The ultimate issue still may be of law. But as far as I'm concerned, in insurance coverage cases, almost always the parties have moved for cross-summary judgment. And I did not hear it, Your Honor. Well, but what did you contest in the district court? What is a factual matter precluded summary judgment? I get your interpretation, but you also want a hint. You want to swerve us into the notion of no summary judgment. And then it's sort of almost drive-by briefing. Well, and let's talk about that. And it's an issue of what I did in the district court and what that gets to pass the summary judgment motion. And that is a detective who you can argue about whether it's a fact or you can argue about whether it's a conclusion. Either way, it's something he's entitled to testify to. They didn't put on conflicting evidence, right? There was no conflicting evidence. Okay. So his view, I suppose, I don't know that the judge didn't say that he wasn't credible. He did not. So the judge obviously took his opinion as the credible opinion of a police detective who has looked at many drive-by shootings from a completely different perspective than coverage and taking that into account made its determination of law. I don't understand why that wasn't procedurally proper use of summary judgment. Because the judge is not entitled to make his call about whether whatever Detective Sweeney said is correct or incorrect. Detective Sweeney is entitled to advance his testimony as to what the . . . Okay. But procedurally, what happens next? Sure. Procedurally, we have evidence that is before the judge. The judge is then basically ignored. He didn't really talk about Detective Sweeney's opinion. You don't understand what happens next. Is the judge required then to find coverage based on Sweeney's testimony? Absolutely not. It becomes a jury issue. But you're saying he was required not to find no coverage. It becomes a factual issue for the jury, Your Honor. Wait. Coverage is never a jury question under Missouri law. Your Honor, that is something that is often stated but not quite true. Because under Missouri law . . . They get the question of coverage. They get the question of fact as to what the purpose of the car was and whether it served as an instrumentality. It's just like any expert in any case, Judge, can testify as to ultimate facts. Walton points out that instrumentality is just a word of convenience in the case law, interpreting the legal principle. What they also said, and what Walton also said, and made specific in, I think it was the second to last footnote, was if we had developed different facts here, if we had developed additional facts beyond what we had presented by the plaintiff, which wasn't anything really, then we may have reached a different result. And the reason why we may have reached a different result is if there were facts developed that allowed us to find that a car can serve as the instrumentality of whatever, whether it's a dog biting somebody in Walton or here, whether it's a drive-by shooting, then we would have come up with a different conclusion as far as what the summary judgment was concerned and whether that went back to the jury. Okay. Let's assume it's an issue of law and proceed with that on that basis. Okay. I mean, that's the way the district court decided it. And I don't disagree, Judge, and obviously we disagree. And that's the way the Walton court decided it.  They said on the undisputed facts, as a matter of law, there's no coverage. Because there was no facts developed to show whether the car served as the instrumentality or not. Counsel, do we even need to look at Walton in light of Ward versus international indemnities in the 1995 case? There are a number of reasons why you don't need to look at Ward, Your Honor. Number one was a different insurance policy. The insurance policy did not have the arising out of language. Number two, there were no facts developed in that case either. Number three is that, as the Walden case pointed out, Ward is a bit of an outlier in that they added a requirement that Schmidt versus Utilities did not put in for these kind of things. They talked about an inherent use, which really no other Missouri case has found. And finally, I would note that the New Jersey case that was the basis of Ward and that Ward relied on to reach this decision was subsequently rejected by the New Jersey Supreme Court in its rationale in which they talked about this nexus between an instrumentality and the use of the car in a drive-by shooting. What was the policy language in Ward? In Ward, it was resulting from. It wasn't arising out of. But use, the same word, use. Use, absolutely. And I don't think there's a lot of dispute about use. The issue is how far we go in use. If it's resulting from, the courts have interpreted that much more narrowly. If it's arising from, like we have here, the courts have given it a much more expansive definition. What's your authority for that particular point, that arising out of and resulting from are? Schmidt versus Utilities, Missouri Supreme Court case. All right. Great. Thank you very much, Your Honors. Good morning. I'd like to address first just briefly. I think the court has recognized at some point in time, all factual disputes become legal disputes. Once all the facts are in, the determination is made whether or not those facts are legally sufficient to prove plaintiff's case. Plaintiff has the burden here to prove that their case falls within the coverage of the LM general policy. They had an opportunity to do so. Rule 56 provides if there is more discovery to be done, you can do more discovery. But the reality is there was no discovery to be done because there are no more facts. This is a drive-by shooting. This is exactly the Walden situation where the only facts you have are those facts that are presented. What Detective Sweeney actually testified to in their briefing, they called it, he said it was integral, but he didn't say that. And in their statement of fact, they said that it was instrumental. He didn't say that. He said it's a mechanism. And, of course, it is a mechanism. If you pull up in a car and shoot somebody, the car is the mechanism by which that allowed you to pull up and shoot somebody. But the basis of the liability is the shooting. Pulling up in the car isn't a crime or isn't a civil infraction. It's the shooting that's the basis of the liability. Let me go factual here. I've got the fact law question. But in terms of distinguishing or not distinguishing this from Walden and perhaps Ward, was there coverage for an intentional hit and run under this provision of your client's policy? There would be coverage for an intentional hit and run if you define hit and run as running your vehicle into somebody. Yeah. As opposed to, because the hit and run as it's used in the policy refers to contact that actually causes a collision or conduct that causes a collision. So hit and run is defined broadly. We know from the Missouri cases that the vehicle itself doesn't have to do the injury. Well, by statute. So if it's an intentional hit and run and the injury inflicting mechanism was, you know, a log in the road, but the uninsured or unidentified vehicle and its driver intended to strike this obstacle and send it into the car or the person who's insured. Correct. So you're saying that's covered. An intentional hit and run, if you define hit and run, is running the vehicle into the other vehicle. No. Running the other vehicle with the intent of causing that. If they use, if the, as the policies define that the uninsured motorist coverage arises from the liability for the bodily injury arising from the use of the vehicle. So if the vehicle is used to force somebody off the road and there's no contact, or if the vehicle is used to ramp somebody and there is contact that under that scenario, absent something else that that might preclude coverage, there would be coverage because the vehicle is being used. And the. Well, the vehicle here was moving. I think the facts would indicate the vehicle is not moving at the time of shooting. No, no, not the insured vehicle. The uninsured vehicle. This, I. The injury inflicting when the, by the occupants or by the vehicle. I know that, I know that's what you want to debate and limit, limit coverage to injury inflicted by the vehicle and not by the occupants. The vehicle was moving. So if the vehicle had an improperly secured bicycle or canoe that fell off as it drove by and struck the insured, your client's insured, or his or her vehicle, that'd be covered, right? Because the, the liability stems from being hit by the canoe, which was being towed or carried by the vehicle. So it's a use of a vehicle to carry a canoe that then resulted in damage. So if the, if the occupants had held their arm out of the window as it drove by and struck the insured and in the face, is that covered or not covered? Closer call, but probably not covered at that point in time. Because it's the use, because the vehicle. Well, if it was accidental. If the dog was hanging out the window and the vehicle had been moving in Walden and the dog, instead of biting, had struck. During the operation of the vehicle, if the dog had come loose and flew into the road and somebody swerved off. Under those circumstances, I think the Missouri courts that have looked at this issue could indicate or could find that, in fact, that does constitute, that the liability does arise out of the use of the vehicle in those circumstances. Because you're using the vehicle. Here, the focus of the case is like Ward, like Ford, are to, to address. The vehicle was being used to inflict injury. The gun was used to inflict injury. And what the Missouri appellate courts. So the gun, a gun as opposed to a fist makes the difference in coverage? In Lemons, we had a fist. In the Lemons case, we had. What's the Lemons case? I don't know. The Lemons case, which is out of the Southern District, which was relied upon by Ward. So Ward, in fact, relied on Lemons, and Lemons cited the New Jersey case that Mr. Canarium talked about.  That doesn't sound like a Missouri court. I mean, the Southern. And we cited in our brief, it's Lemons versus Prudential, 878 Southwest 2nd, 853. It's out of the Eastern District, and it's 1994. And the insured was rear-ended. Which then resulted in a fist fight between the occupants of both cars. And the, the victim of the assault then sought uninsured motorist coverage. And the court found that there was no causal connection between the assaulter's actions and the use of the vehicle. So clearly in that case. That one sounds easy, frankly. Much easier than this case. Well, I think it's actually, I think it's actually harder in the sense of that vehicle, just like in this case, that vehicle brought the assailant to the scene. But for that vehicle bringing the assailant to the scene. But that vehicle also rammed into the other vehicle. But that vehicle wasn't being operated at the time of the assault. Just like the car in Walden. The, but whether or not the, whether the, but the operation of the vehicle itself. Again, the focus of the cases like Ward and Ford and Lemons and Walden have been on what is the, what is the actual liability. There's no liability for simply driving your car and pulling up next to somebody. There's only liability for shooting somebody. So the car in these circumstances, the Missouri Appellate Court. Your focus on liability doesn't jibe with the breadth of arising out of as described in Schmidt. But that's what. Injury arising out of use. But that's what the LM general policy says. It doesn't say injury. It says bodily injury from which the liability arises out of the use. It doesn't say it does. It actually inserts the liability portion. So it's the liability that we have to focus at. And it's similar language to what's in Ward. And obviously there are questions about the resulting versus arising. There are no cases that have found those terms to be treated differently. There are none that say resulting. But I wanted to follow up on that because opposing counsel said Schmidt was his authority for the proposition. They're different. And Ward actually treated them the same. And as I recall, Schmidt was arising out of. Ward was resulting from. But there's none where they've sort of compared and contrasted those terms that I could find. Am I wrong about that? You're not wrong about that. You're exactly right on. But since 1967 when Section 379 was put in place that required uninsured motorist coverage, Section 379 uses the term arising out of the use. And so policies, whether they say resulting or not, the court is going to read into them the term arising. So either you can treat them as synonyms or you can read into it. But what Ward clearly did is it looked at the policy language and then used the arising out of analysis. So regardless of what. So if resulting truly is a narrower, I guess, description than arising, it doesn't matter because in Ward the court still applied the arising out of concept. I wonder if what the Missouri, and this is just to kind of step back and take a 10,000-foot view of this. I wonder if what's actually happening is there's some notion of probable or, excuse me, proximate cause that is being brought into this by the Missouri courts. The Missouri courts are kind of all over the place. There's different cases sort of saying slightly different things. But I wonder if this is really just a question of proximate cause so that a lot of the hypotheticals that Judge Loken gave are just a question about how closely causally related these two events are. I 100% agree. And when you inherit in Schmitt and then inherit in some other cases that are followed. Well, then under Erie we have to put those cases aside. But it's not a proximate cause. In Schmitt. But Schmitt says you can't do proximate cause. Schmitt says expressly you can't do proximate cause. So the Missouri courts of appeals, if we come to the conclusion that that's what the Missouri courts of appeals have done without admitting it, then we're obligated under Erie to ignore those cases. And I don't believe that they are doing that. I think what they're doing is something that's between but for and proximate cause, which is exactly what the Schmitt court directed them to do. There has to be a causal connection that links the use of the vehicle. And the cases that have found that causal connection, such as Whitehead, they found that the actual driving of the vehicle was the trigger that then, in fact, Whitehead had a shooting. But it was the driving of the vehicle that triggered the trigger. And under those circumstances, that's certainly not proximate cause. In fact, that wasn't even the basis for the claim in the underlying case. So it's not proximate cause they're doing. But they're saying it's more than but for. But it's less than proximate cause. Counsel, don't we get to the same place by focusing on the word use, which is in the policy, and concluding that this was not the use of the vehicle, it was the use of the gun? Absolutely. Absolutely. And so our focus of our argument is this is not the use of the vehicle. And the arising out of portion does establish. I mean, I do think they both have to be right in context because you have to look at use in the context of whether it is approximate cause or but for. But what the courts have said clearly is that but for is not enough. That is not an eerie issue. And their record that they created, with all the evidence they had, is nothing more than but for. And because it's but for only, as Walden tells us, and we have essentially every district within, every appellate district within the state of Missouri, has ruled consistently on this issue. Walden from the Western District then incorporates all these cases from the Eastern District and the Southern District. So we have a consensus. Well, frankly, I haven't read Lindstrom, but as described in the Pohn and Cousin reply brief, it sounds much more persuasive than Sweeney's testimony as to why this arguably was arising out of the use of the vehicle. Yeah, in a Lindstrom case, in a subsequent decision from that same Supreme Court of that state, Lindstrom's been limited to PIP claims. Because a PIP statute, personal injury protection, which Missouri doesn't have PIP, but that state has PIP, PIP claims have a much lower threshold for proof. All they have to have is an accident and injury, and that's it. They don't have the arising out of the use language that you have in Missouri's UM claim. So this whole argument about Lindstrom and its application, one, it's just a red herring, but two, it doesn't matter because none of that is binding on these courts that have relied upon their interlacing decisions since Schmidt for more than 50 years. I believe my time is up, so unless there's more questions, thank you. I'll give you a minute for rebuttal if you want. I'll be happy to take any questions the court has. I think I've said everything that needs to be said. I think you both have given us the problem. Yeah. Effectively, and it's an interesting case. We'll take it under advisement. Great. Thank you very much, Your Honor.